```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,                         :
                                                  :
          v.                                      :    MEMORANDUM & ORDER
                                                  :    19-CR-00466 (WFK)
CLEON OTHNEIL ELLIS,                              :
                                                  :
                      Defendant.                  :
-----------------------------------------------------------------X
```
**WILLIAM F. KUNTZ, II, United States District Judge:**

CLEON OTHNEIL ELLIS ("Defendant") pled guilty to one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to time served, which to date is 17 months and 17 days, along with a term of supervised release of 1 year, and the $100 mandatory special assessment. The Court hereby adopts the following special conditions of supervised release: (1) Defendant shall comply with immigration officials; and (2) if deported, Defendant shall not illegally re-enter the United States.

## BACKGROUND

On October 16, 2019, the United States filed an indictment charging Cleon Othneil Ellis ("Defendant") with one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). The indictment alleges that, on or about October 7, 2019, Defendant, a foreign national who had previously been removed and deported from the United States after a conviction for the commission of an aggravated felony, was found in the United States. On December 6, 2019 Defendant pled guilty to the sole count of the indictment. *See* ECF No. 10, Plea Hearing Minute Entry; *see also* ECF No. 11, Plea Agreement. The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.      Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

**II.     Analysis**

    **A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

        a.    <u>Family and Personal Background</u>

Defendant was born in Kingston, Jamaica and has no lawful status in the United States. *See* ECF No. 13, Defendant's Sentencing Memorandum ("Def. Mem") at 1–2. Defendant grew up in an intact home in Kingston until his parents' separation, when he was approximately thirteen or fourteen years old (1987–1988). ECF No. 12, Presentence Investigation Report ("PSR") ¶ 37. Defendant was raised under adequate financial circumstances by his mother and the family owned a grocery store, meat market, and bar. *Id.* ¶ 39. Defendant's father provided financial assistance and maintained regulator contact with Defendant. *Id*.

In 1989, Defendant came to the United States to attend high school in Massachusetts. Def. Mem. at 2. In Massachusetts, Defendant lived with his uncle and his uncle's wife for three or four years. *Id.* ¶ 40. After this time, he moved to New York because he did not get along with his uncle's wife. *Id.* Defendant completed the eleventh grade at Andrew Jackson High School in the Cambria section of Queens, New York but was expelled for fighting in twelfth grade and dropped out in 1992. *Id.* ¶ 53. From approximately 1992 to 1993, Defendant attended high school equivalency classes at Jamaica High School in Queens, NY but did not complete the program. *Id.* Defendant has worked as construction company laborer, a taxi driver, a driver and maintenance worker for a daycare, a maintenance worker, and a chef. *Id.* ¶¶ 58–64.

In 1991, when he was seventeen years old, Defendant began dating Tanisha Bramwell. *Id.* ¶ 41. They have three children together, and were for a time separated, before getting back together in approximately 2003. *Id.* ¶¶ 40–41. Defendant financially provided for his family until the instant arrest and, by his own account, has always shared a "great" relationship with his children, who are aware of the instant offense and are supportive of him. *Id.* According to Defendant, Ms. Bramwell can financially provide for the family on her own. *Id.*

Additionally, Defendant has three other children with three other women: Shanna O'Connor, Melony Taylor, and Christine MacKenzie. *Id.* ¶ 42–45. Defendant does not have close with relationships with Ms. O'Connor, Ms. Taylor, or Ms. Mackenzie. Defendant believes Ms. Taylor and Ms. O'Connor are financially struggling to provide for their children but maintains he financially supported Ms. MacKenzie's child. *Id.* Defendant describes his relationship with these three children as either "great" or "good." *Id.*

      b.    <u>Defendant's Physical Condition, History of Substance Abuse</u>

In 2000, in Philadelphia, Pennsylvania, defendant was shot six times. According to Defendant, he was the victim of a robbery attempt and was targeted because he was selling marijuana. *Id.* ¶ 47. He spent four months in the hospital and doctors were able to remove five of the six bullets. *Id.* As a result of the shooting, Defendant lost a kidney and spent approximately seven months undergoing rehabilitation and physical therapy. *Id.* Since completing therapy, he has taken painkillers for chronic back pain. Additionally, Defendant notes that smoking marijuana has helped ease his guns-shot related back pain. *Id.* ¶ 51. Defendant does not drink alcohol because he has only one kidney and reports no other use of illicit substances. *Id.*

Defendant's cellmate has tested positive for COVID-19 and Defendant has shown symptoms of the virus but has not yet been tested for COVID-19 by the MDC, although he has requested the test on several occasions. *Id.* ¶ 48.

      c.    <u>Legal History, Nature of Offense</u>

On May 26, 2004, Defendant appeared before an immigration judge and an order of voluntary departure was issued. *Id.* ¶ 39. He failed to depart voluntarily within the specified time and became an Immigrations and Customs Enforcement ("ICE)") fugitive. *Id.*

4

On May 20, 2010, Defendant pled guilty in the United States District Court of the Eastern District of New York to Conspiracy to Distribute and Possess with Intent to Distribute More than 50 Grams of Cocaine Base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). *Id.* ¶ 2. On January 24, 2011 he was sentenced by United States District Judge Allyne R. Ross to 21 months of imprisonment and 4 years of supervised related and was then removed from the United States to his native country, Jamaica, on March 21, 2011. *Id.*

A criminal records check revealed that Defendant was arrested in Georgia on January 9, 2016. *Id.* ¶ 7. The Criminal Indictment reflected that Defendant defrauded Capital One Bank by using a forged credit card for the purpose of obtaining merchandise. He was released on a $9,000 recognizance bond on January 12, 2016, but the bond was revoked on November 4, 2016 for failure to appear for arraignment. *Id.* ¶ 26. A bench warrant was issued on the same date. *Id.* He was ordered to appear before the court on May 6, 2017, but the case remains pending. *Id.*

In September 2019, ICE received information from a cooperating source that Defendant was present in the United States and residing in Brooklyn. *Id.* ¶ 3. An investigation uncovered that Defendant was involved in automobile accident and had used the alias "Kemar Baker" in interactions with law enforcement. *Id.* ¶ 4. Additionally, Defendant served a period of incarceration at Riker's Island Correctional Facility in Queens, New York in January 2017. *Id.* A search of immigration records revealed that Defendant did not have permission to re-enter the United States after removal. *Id.* ¶ 5.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;

5

(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence adequately punishes the Defendant for his crime and provides both general and specific deterrence. The Defendant illegally re-entered the United States after having been convicted of an aggravated felony and removed for being illegally present in this country. As noted, this was not the first time Defendant had disobeyed a removal order. Additionally, Defendant continued to engage in criminal conduct even after he illegally re-entered the United States. This sentencing will deter others from engaging in similar conduct, and justly punishes the victim for his past offenses.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

On December 6, 2019, Defendant pled guilty to Count One of the Superseding Indictment pursuant to a written plea agreement. ECF No. 11. The indictment charged Defendant with one count of Illegal Re-entry Following Deportation for an Aggravated Felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b).

Defendant faces a maximum term of imprisonment of 20 years. Additionally, the Court may impose a term of supervised release of not more than 3 years, 18 U.S.C. § 3583(b)(2), maximum fine of $250,00.00, 18 USC. §3571(b), and a mandatory special assessment of $100.00, 18 U.S.C. § 3013. Defendant may be required to pay the costs of United States Sentencing Commission, Guidelines Manual ("USSG") § 5E1.5, and the Court may order restitution be paid to any victim of the offense, 18 U.S.C. § 3663(a)(1)(A).

6

**D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The applicable Guideline for violations of 8 U.S.C. §§ 1326(a), 1326(b)(2) is Guideline § 2L1.2. *See* USSG § 2L1.2. The base offense level is 8. USSG § 2L1.2(a). If, before Defendant was ordered deported or ordered removed from the United States for the first time, the Defendant engaged in criminal conduct that, at any time, resulted in a conviction for a felony offense (other than an illegal re-entry offense) for which the sentence imposed exceeded one year and one month, the offense level is increased by 6. *Id*. § 2L1.2(b)(2)(C). Considering his conviction before Judge Ross, Defendant qualifies for this 6-level enhancement. However, where the defendant has clearly demonstrated acceptance of responsibility for the offense—for instance, by pleading guilty—the offense level is decreased by 2. USSG § 3e1.1(a). Accordingly, the resulting offense level is 12.

In the instant case, the Sentencing Guidelines range suggests a term of imprisonment of 12 to 18 months, USSG § 5 Pt. A, or as an alternative, a term of imprisonment of 6 months with a special condition requiring 6 months community confinement, USSG § 5C1.1(d)(2). Defense counsel recommends a "Guidelines sentence of time served (i.e., 12 moths' incarceration, which will functionally amount to a time served sentenced by the time sentencing can go forward)." Def. Mem. at 3. Defense counsel argues nothing in Defendant's record or his conduct warrants exceptional treatment and the time already served by Defendant has been harsher than usual, due to the months of lockdown—"the functional equivalent of being in administrative segregation,

which is a BOP punishment"—and the likelihood that Defendant has contacted COVID-19 while incarcerated. *Id.* at 4.

The Government recommends "a sentence within the Guidelines range, with credit for time the defendant already served." Government's Sentencing Memorandum ("Gov. Mem.") at 4, ECF No. 14.

Probation recommends a sentence of 12 months and a one-year term of supervised release. Probation recommends the following special conditions for Defendant's supervised release: (1) Defendant shall comply with immigration officials; and (2) if deported, Defendant shall not illegally re-enter the United States. Probation does not recommend a fine because Defendant does not appear to have the ability to pay.

Pursuant to the Plea Agreement, Defendant consents to removal. Defendant concedes that he is removable from the United States; waives any right he may have to apply for relief or protection from removal; requests that an order be issued for his removal to Jamaica and requests that the Court, at the time of sentencing, order that Defendant be removed from the United States promptly upon his release from confinement, or, if Defendant is not sentenced to a term of imprisonment, promptly upon his sentencing. Plea Agreement, ECF No. 11 ¶ 6.

Defendant has been incarcerated since October 7, 2019 and consequently has already served a term of incarceration of 17 months and 7 days.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not pertinent to Defendant's sentencing.

**F. The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

**G. The Need to Provide Restitution**

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). This factor is not relevant to Defendant's sentence.

## CONCLUSION

A sentence of time served, a one-year term of supervised release, and a $100 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). As conditions of supervised release, the Court adopts the following special conditions: (1) Defendant shall comply with immigration officials; and (2) if deported, Defendant shall not illegally re-enter the United States. The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein.

**SO ORDERED.**

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II

                                                       UNITED STATES DISTRICT JUDGE

Dated: March 24, 2021
       Brooklyn, New York